**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alvaro HERRERA,**
**Defendant-Appellant.**

**No. 88-2935.**

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1989.

Decided July 6, 1989.

Stephanie Uhlarik, James R. Ferguson, Asst. U.S. Attys., Chicago, Ill., for U.S., plaintiff–appellee.

William P. Murphy, Murphy, Peters, Davis & O'Brien, Chicago, Ill., for Alvaro Herrera.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

MANION, Circuit Judge.

Defendant-appellant Alvaro Herrera pleaded guilty to two counts charging him with violating (1) 21 U.S.C. § 841(a) and 18 U.S.C. § 2 (possession of narcotics with intent to distribute); and (2) 18 U.S.C. §§ 1952 and 2 (interstate travel in aid of a racketeering enterprise involving narcotics). He was sentenced to 136 months in prison to be followed by a four-year period of supervised release, and fined $17,500. He appeals, contending that the district court imposed an improper sentence. Because the district court correctly applied the sentencing guidelines to its factual findings, and because those findings were not clearly erroneous, we affirm.

## I.

On February 11, 1988, Herrera and his wife arrived in Chicago's Union Station aboard Amtrak train number four from Los Angeles. Both originally are from Colombia. Herrera was 40; his wife was 22, and an illegal alien. Because the Herreras fit a "drug courier profile" (for reasons which are irrelevant here), special agents of the Drug Enforcement Administration ("DEA") approached them at the train station and asked to speak with them. The Herreras eventually consented to a search of their bags which revealed approximately $30,000 in cash and 4,988.5 grams of cocaine. Husband and wife were named in a two-count indictment. Count one charged them with knowingly and intentionally possessing with intent to distribute 4,988.5 grams of cocaine, 21 U.S.C. § 841(a) and 18 U.S.C. § 2. Count two charged the pair with interstate travel in aid of a racketeering enterprise involving narcotics, 18 U.S. C. §§ 1952 and 2.

On May 20, 1988, the district court denied the Herreras' motion to suppress evidence which had been obtained during the train station search. In July 1988, Alvaro Herrera pleaded guilty to both counts contained in the indictment. His wife, however, pleaded guilty to a lesser charge contained in a superseding information, charging her with making a false statement of a material fact, 18 U.S.C. § 1001, when she denied to the DEA agents at the train station that she was carrying narcotics.

Herrera's version of the offense (contained in the pre-sentence report) sought to minimize his involvement, characterizing his role in the offense as nothing more than an unwitting "mule." At the sentencing hearing the district court rejected Herrera's version as contrary to common sense and "inconsistent with ... the hard evidence...." Instead, the district court found that Herrera was "an organizer. He controlled or directed the behavior of his wife and was responsible for the movement of 4,988.5 grams of 96 percent pure cocaine. He was quite aware of the quantity of cocaine being transported." As an "organizer," Guidelines 3B1.1(c), Herrera's offense level was increased two levels (to level 32 from level 30 which was based on the amount of drugs he possessed, see Guidelines 2D1.1 (drug quantity table)). The court next increased his offense level to 34, based on its conclusion that Herrera had obstructed the administration of justice. Guidelines 3C1.1. Herrera's offense level was then decreased 2 levels to reflect his acceptance of responsibility, placing him finally at level 32. With a category "I" criminal history rating, the sentencing range was 121–151 months. Guidelines Ch. 5, Part A (sentencing table). The court sentenced Herrera to 136 months imprisonment, the "exact mid-point" of the guideline range.

Mrs. Herrera's sentence was considerably lighter. The court found that she "was not a prime mover" in transporting the

cocaine, and that she had been controlled by her husband. "[G]iven the relationship with her husband and [their] age disparity," the court concluded that Mrs. Herrera was "influenced by [Alvaro's] desires and his requests." She was sentenced to six months imprisonment. (Mrs. Herrera does not appeal her sentence; and Herrera does not complain of the disparity in the two sentences.)

Herrera appeals the district court's determination that he was an "organizer." He contends that the quantity and quality of drugs were wrongly considered in determining his aggravating role in the offense, and that no facts support the district court's conclusion that he controlled or directed his wife's behavior.

## II.

### A.

■ Sentencing under the guidelines is based on two factors: the offense level and the defendant's criminal history. *United States v. Mejia–Orosco*, 867 F.2d 216, 219 (5th Cir.1989), *rehearing denied*, 868 F.2d 807 (5th Cir.1989) (per curiam). For offenses involving drugs, the guidelines contain a drug quantity table which determines the appropriate offense level based on the quantity of the drugs involved in the particular offense. *See* Guidelines 2D1.1. (For 3.5–4.9 kilograms of cocaine, the amount possessed by the Herreras, the offense level under the Drug Quantity Table is 30.) The second factor in sentencing is the defendant's criminal history. This is determined separately from the offense level. *Mejia–Orosco*, 867 F.2d at 219. One of six different "criminal history" categories may be assigned to a defendant based upon a point scale. "Points are assigned to prior convictions depending upon the length of sentence and whether the instant offense was committed within two years of release from prison or while under any criminal sentence." *Id.* *See also* Guidelines 4A1.1. After determining the proper offense level and criminal history, a "sentencing range is calculated from a table by cross-referencing the offense level with the defendant's criminal history. The table

sets sentencing ranges in which the maximum sentence exceeds the minimum by the greater of 6 months or 25%." *Mejia–Orosco*, 867 F.2d at 219; *see also* Guidelines Ch. 5, Part A (sentencing table).

An offense level may be increased under 3B1.1 of the guidelines as it was here, "[w]hen an offense is committed by more than one participant" and if the defendant played an aggravating role in the offense. Guidelines 3B1.1, and Introductory Commentary. The Sentencing Commission explained that 3B1.1 provides "a range of adjustments to increase the offense level based upon the size of the criminal organization (*i.e.*, the number of participants) and the degree to which the defendant was responsible for committing the offense." Guidelines 3B1.1. It was "included primarily because of concerns about relative responsibility." *Id.* *See also* W. Wilkins, Jr., *Plea Negotiations, Acceptance of Responsibility, Role of the Offender, and Departures: Policy Decisions In The Promulgation of Federal Sentencing Guidelines*, 23 Wake Forest L.Rev. 181, 192–93 (1988). For an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," a 4–level increase in the offense level is warranted. Guidelines 3B1.1(a). "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," a 3–level increase is warranted. Guidelines 3B1.1(b). Finally, "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in [3B1.1](a) or [3B1.1](b)," a 2–level increase is warranted. Guidelines 3B1.1(c).

### B.

■ In reviewing sentences imposed under the guidelines, § 3742(d) of the guidelines statute provided (before November 18, 1988) that the "court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witness, and shall accept the findings of fact of the district court unless they are clearly erroneous." Section 3742(d) was

amended and renumbered § 3742(e) in November 1988 by the Anti–Drug Abuse Act of 1988, P.L. 100–690, reprinted in 1988 U.S.Code Cong. & Admin.News at 102 stat. 4181, 4417; *see also Mejia–Orosco,* 868 F.2d at 808, by adding to the just-quoted phrase "and shall give due deference to the district court's application of the guidelines to the facts." *Id.* The district court's sentence thus will be affirmed if it results from a proper application of the sentencing guidelines to facts not found to be clearly erroneous. *Mejia–Orosco,* 867 F.2d at 219; *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989). A finding of fact is clearly erroneous only if, after reviewing the entire evidence, we are left "with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). A reviewing court's function is "not to decide factual issues *de novo.*" *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1511 (citation omitted).

▇▇ Whether Herrera was an "organizer" within the meaning of 3B1.1(c) of the guidelines was a fact question for the district judge to resolve. *Mejia–Orosco,* 867 F.2d at 220; *cf. U.S. v. Sarasti,* 869 F.2d at 807 (whether defendant was a "minor" as opposed to "minimal" participant, Guidelines 3B1.2(a) and (b), is a fact question); *United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir.1989) (whether defendant was a "minor" or "minimal" participant is a factual finding). Determining whether a defendant played an "organizer" role requires district judges to draw inferences "from a variety of data, including the information in the presentence report and the

defendant's statements and demeanor at the sentencing hearing." *Mejia–Orosco,* 867 F.2d at 220–21. In this case, the district judge also had the opportunity to evaluate Herrera's statements and his credibility at a plea hearing and during a lengthy hearing on Herrera's (and his wife's) motion to suppress evidence.

While the guidelines provide no definition of "organizer," they do offer some guidance on the matter. The reason for distinguishing the various criminal participants' roles, and for classifying some as organizers, leaders, managers, or supervisors, is to assess punishment based on relative responsibility. Guidelines 3B1.1. Organizers and leaders of criminal activity play an important role in the planning, developing, directing, and success of the criminal activity. *See* Guidelines 3B1.1 Application note 3. Thus, organizers and leaders generally are deemed more culpable than mere managers or supervisors. *Compare* Guidelines 3B1.1(a) (offense level of leaders and organizers of large organizations increased by four levels) *with* 3B1.1(b) (offense level of managers and supervisors of large organizations increased by three levels).[1] The guidelines list (nonexhaustively) several factors distinguishing organizational and leadership roles from mere management or supervision:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Guidelines 3B1.1 Application note 3. In this case, the district judge relied on Herrera's control over his wife, and the fact that Herrera was responsible for the crime.

---

1. In "relatively small enterprises," however, the "distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of § 3B1.1(c)." Guidelines 3B1.1 Background. That is, if 3B1.1(c) applies, it makes little difference if one is an organizer or leader as opposed to a mere manager or supervisor; the offense level is increased by two for all.

■ The government argues that the quantity and quality of the drugs Herrera possessed also tended to show his organizer role, stating that "[t]he amount of narcotics involved in the offense is obviously one circumstantial basis from which to determine the nature and scope of the illegal activity, including involvement of others...." This misses the mark. First of all, the district court relied on Herrera's control of his wife and his level of responsibility in transporting the drugs in deciding that Herrera was an "organizer"; it did not rely on the quantity and quality of the drugs. Second, the "nature and scope" factor goes more to the size of the enterprise, and primarily is used to distinguish organizers and leaders from managers and supervisors within large organizations. Guidelines 3B1.1 Application note 3. Third, while we have no doubt that a large quantity of drugs permissibly may be used to

infer that a large organization exists, that does not address the defendant's relative role in that large organization—the issue under Guidelines 3B1.1. Even if we accept the government's contention that the large quantity of cocaine implies the involvement of others,[2] that does not tell us what role Herrera played with respect to his wife, or even with respect to those others. For the same reasons, we think the high quality of cocaine involved here is not applicable in sorting out Herrera's role in the offense in relation to his wife. We recognize that in some cases high quality may infer a prominent organizational role, Guidelines 2D1.1 Application note 9, but on the specific facts of this case, we do not see how (nor are we told how) the high quality of the cocaine establishes Herrera's organizational role. All of this, however, is not to say that quantity[3] and quality may never be used to

**2.** The district court, however, did not rely on the involvement of untold others; rather, it found only that as between Herrera and his wife, Herrera was the organizer. When sentencing Herrera, the court explained, "I know *at least as between Alvaro and his wife, who the organizer and supervisor was,* and I am convinced that he knew what he was doing and it was part of something; that *there were other people involved in it and he had some role* in that. *Now the scope and depth I do not know,* but based on the evidence before me, *I think he has some significant responsibility in this case* and was not the almost unwitting dupe that ... he portrays himself to be." (Emphasis added.)

**3.** A large quantity can indicate a defendant's role in the offense. *See U.S. v. Buenrostro,* 868 F.2d at 138 (fact that defendant was carrying a large quantity of drugs, and that the drug in question was a narcotic, made a finding of "minimal" or "minor" participant status, Guidelines 3B1.2(a) and (b), inappropriate). And using quantity to infer a defendant's role in the offense does not impermissibly double count quantity. Had the Sentencing Commission wanted to preclude such "double counting," it easily could have done so, as it did elsewhere. *See* Guidelines 2K2.4 Background ("To avoid double counting, when a sentence under this section [—use of firearms or armor-piercing ammunition during or in relation to certain crimes—] is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for firearm discharge, use, or possession [*e.g.,* robbery, Guidelines 2K2.4 Application note 2,] is not applied in respect to such underlying offense; *see also* Guidelines 3B1.3. That section states that if a

defendant has abused a position of trust or used a special skill in committing, concealing, or facilitating an offense, his offense level may be increased by two levels. The guidelines sought to prevent double counting under 3B1.3, stating that it "may not be employed in addition to that provided for in § 3B1.1 nor may it be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." For an illustration, see *United States v. Reich,* 661 F.Supp. 371, 376 (S.D.N.Y.1987) (merger and acquisition lawyer in inside trading case).

The dictum regarding double counting of quantity in *United States v. Guerrero,* 863 F.2d 245, 251 (2d Cir.1988) is not to the contrary. There the Second Circuit held that the district court had erroneously omitted from consideration in sentencing, the defendant's other "relevant conduct" (the distribution of 698 grams of heroin). The district court fixed the offense level too low as a result. However, the court of appeals noted, the trial court reasonably made an upward departure from the (lower) guideline range in light of the large quantity of narcotics involved to arrive at the same sentence as if it had considered the large quantity of drugs as other "relevant conduct" in the first place. *Id.* at 250. The defendant argued that the drug quantity had already been taken into account in setting the base offense level, and that quantity could not, then, be used again as a basis for an upward departure from the guidelines.

The Second Circuit noted that the defendant's argument "would have [had] more force" if the district judge had included the larger quantity of drugs in selecting a base offense level that corresponded to the total amount of drugs.

support a finding that a defendant played an aggravating role in the offense.

But even apart from the quantity and quality of the drugs, there is sufficient other evidence to support the district court's determination that Herrera was an "organizer." Herrera's control over his wife was easily established. She was much younger than Herrera, was an illegal alien, and, in fact, had at one time been Herrera's employee in a legitimate business (a waitress in a restaurant owned by Herrera and his first wife). The court expressly found that Mrs. Herrera acted at Herrera's behest and did what she was told. Further, Mrs. Herrera testified that at the time of her arrest, she was not even sure if her luggage contained cocaine, and that Herrera had never specifically told her she was carrying narcotics. Herrera's control continued at the train station when the couple was being questioned by the DEA agents. He translated for Mrs. Herrera (who spoke little English), offered an explanation for the presence of the drugs, and otherwise appeared in charge. In light of this evidence, and the district court's ample opportunity to listen to and observe both Herrera and his wife, the district court's finding —that Herrera controlled and directed his wife, possessed the decision-making authority for this criminal activity, and planned, organized, and was responsible for the activity—is not clearly erroneous.

We disagree with Herrera's contention that a formal "criminal organization" must be found to exist before 3B1.1(c) of the guidelines may be applied. The guidelines offer no support for Herrera's position. The introductory commentary to 3B1.1 says that 3B1.1 may apply whenever "an offense is committed by more than one participant." And 3B1.1(c) applies "[i]f the defendant was an organizer ... in any criminal activity other than described in [3B1.1](a) or [3B1.1](b)." All that is need-

ed, then, is two to five participants in the criminal activity.

It is also irrelevant that the criminal participants happen to be husband and wife. The guidelines contain no spousal exception; rather, 3B1.1(c) applies any time there is more than one participant, *Mejia–Orosco*, 867 F.2d at 220, regardless if the participants happen to be husband and wife. Herrera seems to suggest that our holding that he was an organizer of the criminal activity involving his wife will result in an automatic finding of organizer, leader, manager, or supervisor status on the part of a spouse who engages in joint criminal activity with the other. We make no such assertion. The mere existence of a marital relationship, without more, will not support such a conclusion.

The district judge's findings of fact were not clearly erroneous, and he correctly applied the guidelines to those findings; thus, we affirm Herrera's sentence. We simply add for future cases, but not by way of criticism of the district court here, that district courts may wish to clarify their ultimate factual findings (*e.g.*, that a defendant played an aggravating role in the offense) by specific findings when possible. *Cf. United States v. Agyemang*, 876 F.2d 1264, 1274–75 (7th Cir.1989) (Cudahy, J., concurring) (importance of fact-finding under sentencing guidelines). "Specific findings will both guide reviewing courts to the evidentiary basis for sentencing judgments, and also help the trial judge to identify matters relevant to application of the guidelines." *Mejia–Orosco*, 867 F.2d at 221–22.

The judgment and sentence of the district court is

AFFIRMED.

---

(Since it didn't, the defendant's argument made little sense.) If that had been the case, the court stated, "we would doubt that this same quantity could be used to justify a departure above that range." *Id.* at 251. This does not change our conclusion. The court in *U.S. v. Guerrero* was referring to an upward departure from a guide-

line sentencing range and not to moving from one offense level to another based on the defendant's aggravating role. Moreover, using the inference available from a large quantity does not double count quantity *per se.* Rather, the large quantity is used to infer a defendant's role in the offense. *See U.S. v. Buenrostro, supra.*