**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ruben FRANCO and Norberto Garcia,
Defendants–Appellants.**

Nos. 89–1703, 89–1704.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1990.

Decided Aug. 9, 1990.

Thomas M. Durkin, Michael R. Pace, Asst. U.S. Atty., Chicago, Ill., for U.S.

Thomas A. Gibbons, Kreiter & Associates, Chicago, Ill., for Ruben Franco.

Robert Habib, Chicago, Ill., for Norberto Garcia.

Before RIPPLE, MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

MANION, Circuit Judge.

Norberto Garcia and Ruben Franco were convicted of one count of conspiracy and three counts of distributing cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Franco also was convicted of possession with intent to distribute 499 grams (approximately a half-kilo) of a mixture containing cocaine in violation of 21.U.S.C. § 841(a)(1). Franco appeals his conviction and sentence, arguing that he was entrapped into selling a larger quantity of drugs and that mitigating factors warranted a downward departure in his sentence. Garcia's appeal is limited to whether the district court improperly counted the 499 grams he was not charged with selling when computing his base offense level under the Sentencing Guidelines. We affirm.

## I. Background

Garcia supplied Franco with cocaine that Franco unwittingly sold to federal narcotics officers. The evidence at trial established that Franco and undercover officers were involved in a series of meetings and telephone calls for the purpose of procuring cocaine. Many of the conversations were tape recorded and introduced by the government as exhibits. There is no dispute that Garcia supplied Franco with cocaine, or that Franco sold cocaine to undercover officers. We will therefore summarize only those facts Franco and Garcia rely on to support their arguments on appeal.

Franco sold Drug Enforcement Agent Nancy Colletti one or two ounces of cocaine on three separate occasions in 1988. On a fourth occasion he sold a half-kilo to Colletti. At trial he produced evidence of cocaine addiction during that period, and voluntarily underwent a 26–day treatment program at St. Elizabeth's Hospital in January 1988. He was unable to stop using cocaine despite the hospital treatment, and after leaving the hospital contacted Colletti on several occasions with offers to sell quantities of cocaine. These conversations followed a pattern: Franco would try to sell Colletti an ounce or two, and Colletti would try to persuade Franco to sell more. At one point

she asked Franco what the largest quantity he could obtain was, and Franco told her four ounces. Still she asked for more, and Franco ultimately agreed to obtain a half-kilo. Franco began to contact Colletti regularly to discuss details of the transaction. When he provided the half-kilo to Colletti on June 24, 1988, he was arrested.

Garcia was initially indicted on the same five counts as Franco: Count I was the conspiracy to distribute cocaine; Counts II through IV were the three occasions when small quantities were sold to Colletti; and Count V was based on the June 24 sale of the half-kilo. Five days before trial the government filed a superseding indictment in which Garcia was not charged for the half-kilo transaction. Further, Count I no longer alleged that the half-kilo transaction was part of the conspiracy. The government now alleged that Franco advised Colletti "that his source (GARCIA) had one-half kilogram of cocaine available for sale for $13,000.00." The government admitted, however, that Garcia was not the source for the half-kilo. After Garcia was convicted, the government alleged in its presentence report that under the guidelines, Garcia must be held responsible for amounts sold by codefendant Franco in furtherance of the conspiracy, including the half-kilo transaction. The district court agreed and counted the half-kilo in computing Garcia's sentence pursuant to § 2D1.4 of the Sentencing Guidelines. This brought his base offense level to 26. The court added two points for his leadership role but subtracted two for acceptance of responsibility, leaving his base offense level at 26. The guidelines set a range of imprisonment between 63 and 78 months. Primarily because the district court thought Garcia more culpable than Franco, and because Franco's base offense level of 28 required at least a 78-month sentence, the court sentenced Garcia to 78 months, the highest amount possible within the guidelines range.

## II. Analysis

### A. *Franco's Appeal*

The crux of Franco's entrapment argument is this: Franco was a low-level narcotics trafficker who was not predisposed to sell large quantities, but in his weakened condition as a drug addict was persuaded by agent Colletti to sell a half-kilo. He therefore appeals his conviction only as to Counts I (conspiracy to sell the half-kilo) and V (possession with intent to sell the half-kilo), and seeks a remand to the district court for resentencing.

■ To successfully employ the entrapment defense, the defendant must show that the government induced him to commit a crime he was not predisposed to commit. Once the defendant provides evidence to that effect, the burden shifts back to the government to prove beyond a reasonable doubt that the defendant was predisposed or that there was no inducement by the government. *United States v. Perez–Leon*, 757 F.2d 866, 871 (7th Cir.1985), quoting *United States v. Gunter*, 741 F.2d 151, 153 (7th Cir.1984).

> When determining whether the government had met its burden in proving that the defendant was predisposed to commit the crime, we must view the evidence in the light most favorable to the government and will affirm if any rational trier of fact could have found the requisite predisposition beyond a reasonable doubt.

*Id.*, citing *United States v. Gunter*, 741 F.2d at 154. Further deference is required where, as here, the jury received an entrapment instruction and necessarily rejected it in finding Franco guilty.

In *Perez–Leon* we noted that

> The factors relevant in determining the predisposition of the defendant are: (1) assessing the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of criminal activity was made by the government; (3) whether the defendant was engaged in criminal activity for profit; (4) whether the defendant expressed reluctance to commit the offense which was overcome only by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion applied by the government.

757 F.2d at 871 (citations omitted). We further recognized that "none of these factors, when considered by themselves, are determinative; however, the most important factor is whether the defendant evidenced a reluctance to engage in the criminal activity that was overcome only by repeated government inducement." *Id.*

■ Our review of the record, in the light most favorable to the government, leads us to the conclusion that the evidence is sufficient to support the verdict of a reasonable jury. Applying the first three factors set forth in *Perez–Leon* to our facts, we conclude that (1) Franco was a drug addict and seller of small quantities of drugs, but had no prior criminal record; (2) Franco suggested the criminal activity of selling small quantities of cocaine, the government initially suggested the half-kilo sale, and Franco initiated the contacts leading up to the actual half-kilo transaction; and (3) Franco was engaged in the sale of drugs for profit.

Franco contends that he demonstrated substantial reluctance to sell the half-kilo that was overcome only by repeated government inducement. We disagree. Franco at first could only sell smaller quantities because his source's profit was greater with more frequent sales of smaller quantities. Franco therefore could not obtain more than a few ounces. This is not reluctance; this is inability, and it says nothing about whether Franco was predisposed to commit the crime for which he was convicted.

Prior to every transaction, Franco initiated contact with Colletti by calling her or paging her through her beeper. When Colletti first inquired about larger quantities, Franco told her "maybe later," and said he would discuss obtaining larger quantities with his source. Later Franco assured Colletti that his source was able to provide kilogram quantities of cocaine. His initial inability to sell larger quantities was overcome by his frequent later attempts to set up a large-quantity sale with Colletti. Eventually he succeeded. This is more than enough evidence for a reasonable jury to reject the entrapment defense.

Franco also contends the district court erred by failing to depart downward from his guidelines sentence because of the mitigating factor that Franco was initially reluctant to sell larger amounts. This argument is resolved against Franco by *United States v. Franz*, 886 F.2d 973 (7th Cir.1989), where we held that we lack appellate jurisdiction over an appeal of a district court's refusal to depart from the guidelines unless the sentence was imposed in violation of law. Franco does not argue that his sentence is unlawful; thus *Franz* controls and we lack jurisdiction to consider this claim.

### B. *Garcia's Appeal*

■ Sentencing decisions of the district court are reviewed deferentially, and the court's findings of fact will not be disturbed unless clearly erroneous. *See United States v. Herrera*, 878 F.2d 997, 999–1000 (7th Cir.1989).

Section 2D1.4 of the Sentencing Guidelines provides:

**Attempts and Conspiracies**

(a) Base Offense Level: If a defendant is convicted of participating in an incomplete conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

Application note 1 of the Commentary provides:

*If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale. If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. Where the defendant was not reasonably capable of producing the negotiated amount the court may depart and impose a sentence low-*

*er than the sentence that would otherwise result. If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.*

■ The district court found that Garcia was part of the conspiracy that included Franco's sale of the half-kilo, even though the government admitted Garcia was not the actual source. The court, after reviewing the evidence submitted at trial, found that Garcia was able and willing to sell the half-kilo to Franco and would have done so if Franco had not obtained the half-kilo at a lower price from another source.

Garcia contends the district court erred by applying § 2D1.4 to include the half-kilo of cocaine in computing his base offense level because Garcia was not charged in the superseding indictment with conspiracy to provide the half-kilo. While it is true Count I of the indictment does not charge Garcia with providing the cocaine for the half-kilo transaction on June 24, the indictment charges Garcia with being a member of a conspiracy to possess and distribute cocaine from "in or about April 1988 to in or about June, 1988...." The indictment also charges that Franco promised to obtain the half-kilo of cocaine from his source, identified in parentheses as Garcia. Count I encompassed the entire conspiracy to distribute cocaine to the undercover DEA agents, including the June 24 half-kilo sale.

Substantial evidence supports the district court's conclusion that Garcia was part of the conspiracy to distribute the half-kilo. Garcia now admits he was Franco's source for the ounce transactions, and the jury found him guilty on those counts. During those pre-sale negotiations, on several occasions Franco stated that his source (Garcia) could provide larger quantities of cocaine. On April 26, 1988, Franco told DEA agent Colletti that "his guy" could provide kilogram quantities of cocaine, and that he would check on prices. The next day Franco told DEA agent Guerra, posing as Col-

letti's husband, that Franco's source could provide kilogram quantities. On two later occasions Franco reiterated that claim. In taped telephone conversations Franco compared prices at which he could obtain half-kilograms from his "original source" (Garcia) and another source. Franco testified, and the district court found, that Franco and Garcia had negotiated and decided on a price, but that Franco decided to purchase the half-kilo from another source because it was cheaper. The district court's conclusion that Garcia agreed to provide and could have provided the half-kilo as part of the conspiracy is amply supported by the evidence.

In any event, Garcia knew of Franco's desire to possess the half-kilo and sell it to Colletti. Garcia was convicted of conspiracy to possess and distribute cocaine, and was responsible for any "conduct of co-conspirators [i.e., Franco] in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable." Application Note 1 to § 2D1.4. Because he knew or could reasonably have foreseen that Franco would possess and sell the half-kilo, it was proper to use the half-kilo in computing Garcia's sentence. *See United States v. Savage*, 891 F.2d 145, 150–51 (7th Cir.1989).

■ Garcia also protests the district court's two-point enhancement of his base offense level for being an "organizer, leader, manager or supervisor" of the criminal activity pursuant to § 3B1.1(c) of the Guidelines. Application Note 3 to § 3B1.1 provides:

In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be

more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

We need not address this issue at length because the evidence introduced at trial so clearly supports the district court's determination. That evidence shows, among other things, that Garcia: received a greater share of profits; was the supplier of cocaine; directed Franco and others in the distribution; physically supervised the distribution; and maintained decisionmaking authority over the entire operation. This easily passes the requirements for an enhancement under § 3B1.1, and the district court's enhancement was not clearly erroneous. *See, e.g., Herrera,* 878 F.2d at 1000–02.

### III. Conclusion

Franco and Garcia were properly convicted and sentenced. Franco was not entrapped by the conduct of DEA agents, and we lack jurisdiction to consider the district court's refusal to depart downward from his guidelines sentence. The half-kilo was properly included in computing Garcia's base offense level, and that level was properly enhanced for Garcia's managerial role in the criminal activity. The district court is, in all respects,

AFFIRMED.