**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Julio HERNANDEZ,
Defendant–Appellant.**

No. 90–1341.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 1991.

Decided April 29, 1991.

Joseph R. Wall, Asst. U.S. Atty., Office of U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

David S. Mejia, Oak Park, Ill., for defendant-appellant.

Before WOOD, Jr., FLAUM, and MANION, Circuit Judges.

PER CURIAM.

Julio Hernandez was charged in a three-count indictment with one count of conspiracy to possess cocaine with intent to distribute and one count of possession with intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 846 and 841(a)(1).

The third count of the indictment was directed at Hernandez's common-law wife, who faced a separate charge of possession with intent to distribute cocaine, in addition to the conspiracy charge. Hernandez pled guilty to the conspiracy count and the possession count was dismissed.

Hernandez was sentenced under the Sentencing Guidelines. After reviewing the presentencing report ("PSR") and conducting a hearing, the district court determined that Hernandez's Guidelines offense level was 34 and sentenced him to 156 months imprisonment. The district court reached this offense level in part by giving Hernandez a two-point enhancement under U.S.S.G. § 3B1.1(c) as an "organizer, leader, manager or supervisor." It is this two-point enhancement that Hernandez challenges on appeal.

## I. FACTS

At his sentencing hearing, Hernandez testified that he had driven to Florida approximately 12 times to pick up quantities of cocaine which he then delivered to unnamed individuals in Milwaukee. He explained that he never used his own money to purchase the drugs and that the logistics of the purchases were prearranged by other individuals. Hernandez testified that he was paid for his services upon his return to Milwaukee after each trip to Florida.

Further, the PSR established that, after receiving information that Julio Hernandez was a drug dealer from an individual previously indicted on federal drug charges, the Drug Enforcement Administration ("DEA") began surveillance of Hernandez's home. Under DEA supervision, a confidential informant, Jeff Smith, contacted the Hernandez home seeking to purchase cocaine. Smith was informed by Andrea Flees, Hernandez's common-law wife, that Hernandez was in Florida and that he would "take care of" him upon his return. Flees also informed Smith that Hernandez was expected back in a day or two. Nevertheless, Flees and Smith made arrangements for a drug transaction the next day.

Hernandez testified that he had discussed the proposed sale with Flees and advised her not to carry out the plan because Smith was dangerous. However, in a statement given to DEA officials, Flees stated that Hernandez instructed her where to purchase cocaine. In addition, Hernandez conceded that he had introduced Flees to a drug contact and knew that Flees obtained cocaine from that individual. Further, Hernandez stated that he maintained his contacts with drug purchasers through Flees while he was out of town. He also stated that Flees could conduct transactions in his absence if she wanted to or if a drug purchaser called their home. At Hernandez's sentencing hearing, the government stated that an informant could testify that Flees conducted drug sales for Hernandez in his absence.

After hearing the evidence, the district court concluded that there was sufficient information to warrant a two-point enhancement for Hernandez's leadership role in drug transactions. The court stated, "it is clear that when he [Hernandez] was not in the City of Milwaukee, that this activity was conducted by Ms. Flees." Further, the court stated that it reached the conclusion that Hernandez had a supervisory role over Flees because, "I have had the opportunity, of course, of observing Ms. Flees, and frankly there is little doubt in the Court's mind that she would not be capable of supervising an activity of this sort."

## II. ANALYSIS

■ This court affords a deferential review of district court decisions under the Sentencing Guidelines. *United States v. Franco*, 909 F.2d 1042, 1045 (7th Cir.1990). A district court's factual determinations made in conjunction with sentencing will be overturned only if those determinations are clearly erroneous. 18 U.S.C. § 3742(d). Determinations regarding whether a defendant has a managerial or supervisory role are factual. The district court must draw inferences from a variety of data, including the defendant's demeanor and information in the PSR, in order to reach such a conclusion. *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989); *United States v. Camargo*, 908 F.2d 179, 185 (7th Cir.1990);

*United States v. Mejia–Orosco,* 867 F.2d 216, 221 (5th Cir.1989).

■■■ Section 3B1.1 of the Sentencing Guidelines distinguishes between leadership or managerial roles in criminal activities involving five or more participants, *see* § 3B1.1(a) and (b), but does not make these distinctions for criminal activities with less than five participants.[1] Thus, either a leader or manager in a criminal activity involving less than five individuals faces a two-point enhancement. The commentary accompanying this provision explains that the difficulty in distinguishing an organizer in smaller organizations, "is reflected in the inclusiveness of § 3B1.1(c)." Further, while the guidelines provide no definition of "organizer", Application Note 3 to § 3B1.1 includes as one factor indicating leadership in a criminal activity "the degree of control and authority exercised over others."

Hernandez argues that the district court improperly found that he occupied either a leadership or supervisory role over Flees in her single, unrelated cocaine sale to Smith, which occurred while he was in Florida. He bases his argument on the fact that Flees was charged in a separate count for that transaction. He contends that his conspiracy was with unnamed individuals for whom he acted as a cocaine courier and with whom Flees had no connection. The government responds that Hernandez and Flees were indicted as co-defendants in an on-going conspiracy.

In *United States v. Tetzlaff,* 896 F.2d 1071 (7th Cir.1990), this court identified two prerequisites for the application of § 3B1.1. In order to face a potential enhancement under § 3B1.1, a defendant must have held a leadership role in an offense of which he was convicted and the offense must include the participation of more than one person. *Id.* at 1074. The

court explained that a defendant must be convicted in order to face a § 3B1.1 enhancement because the plain language of the statute focuses on "the defendant's role in the *offense.*" *Id.* at 1074 (emphasis added). The offense must involve more than one individual because the district court must allocate relative responsibility among the criminal actors in its application of § 3B1.1. *Id.* at 1075. *See also United States v. Brown,* 900 F.2d 1098, 1102 (7th Cir.1990) (participant in scheme who enabled another to join the crime occupied a supervisory role over that individual).

Hernandez pled guilty to a conspiracy to possess and distribute cocaine. Thus, his crime necessarily involved more than one participant. However, in order to evaluate relative responsibility, the district court must know among whom this responsibility is to be distributed. If Flees was not a member of the conspiracy, Hernandez could not qualify as a supervisor of her activities. While the evidence is somewhat contradictory,[2] a review of the record indicates that an allocation of relative responsibility between Flees and Hernandez is possible. Flees and Hernandez were indicted together for conspiracy to possess and distribute cocaine. Further, from the evidence before the district court it was not clearly erroneous to conclude that Flees and Hernandez acted together to possess and distribute cocaine. There was evidence that Hernandez and Flees consulted regarding the sale to Smith, that Hernandez was aware that Flees sold cocaine, that Hernandez knew where Flees purchased the cocaine she sold and that in fact he had introduced her to the supplier. Thus, the district court concluded that Flees carried on Hernandez's drug sales while he was out of town.

Further, this court has focused on the district court's ability to assess a witness'

---

1. Section 3B1.1 provides, in part, "If the defendant was an organizer, leader, manager or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

2. In *Herrera,* 878 F.2d 997, 1002 (7th Cir.1989), and *Camargo,* 908 F.2d at 185, we suggested that district courts clarify their ultimate factual find-

ings with specific facts whenever possible. We note that such specific findings both aid the district court in identifying relevant factors in applying the Guidelines and guide the reviewing court to the evidentiary basis for a sentencing determination. Again, we urge district courts to make such specific findings.

credibility in determining whether a defendant holds a leadership role. *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989). In *Herrera*, this Court emphasized that the district court was able to judge the credibility of the defendant and assess his control over his co-defendant in upholding an enhancement for a leadership role. *Id.* at 1000. Similarly, in Hernandez's case, the district court specifically commented on its assessment of Flees' ability to initiate drug sales when it concluded that Hernandez supervised his wife's activities.

### III. CONCLUSION

Because the evidence in this case does support a finding of a conspiracy between Hernandez and Flees, and our review of district court factual determinations in the context of sentencing is deferential, we hold that the district court was not clearly erroneous in finding that Hernandez occupied a supervisory role over Flees. Therefore, the district court's two-point Sentencing Guidelines enhancement for Hernandez's supervisory role is AFFIRMED.