# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-3004

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

COREY A. SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:02-cr-71-02—**William C. Lee**, *Judge.*

ARGUED JULY 7, 2004—DECIDED DECEMBER 27, 2004

Before CUDAHY, COFFEY, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Corey Smith and two code-
fendants were charged with one count of distributing and
one count of conspiring to distribute crack cocaine. *See* 21
U.S.C. §§ 841(a)(1), (b)(1)(B), 846. One of the codefen-
dants, Alonzo Grant, made a deal with the government
and testified against the other two. After a jury trial at
which Grant's testimony played a crucial role, Smith was
convicted of both counts, and the third codefendant, Travis
Black, was acquitted of both counts. Smith initially ar-
gued in his brief that the government failed to disclose all
of the terms of its deal with Grant, and that the non-
disclosure violated his due process rights. *See Giglio v.
United States*, 405 U.S. 150, 154-55 (1972); *Brady v.*

*Maryland*, 373 U.S. 83, 87 (1963). At oral argument, however, Smith's counsel withdrew that argument, concluding that Smith should raise it in a collateral attack and further develop the record. *See* 28 U.S.C. § 2255. Smith's remaining arguments on appeal are that there was insufficient evidence to convict him and that he was sentenced in violation of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *cert. granted*, 73 U.S.L.W. 3073, 3074 (U.S. Aug. 2, 2004) (No. 04-104). We affirm in part and vacate and remand in part.

On July 15, 2002, a confidential informant put Detective Mitch McKinney in touch with Grant so that McKinney could purchase an ounce of crack. Grant, who was unaware that McKinney was a police officer, said he had to find a supplier. The two men agreed to talk later. Grant later called McKinney and told him to go to Packard Park. When McKinney arrived, Grant said he needed to borrow McKinney's cell phone to call his supplier. According to Grant's testimony, he then called Smith and told him to come to the park. The detective never checked his phone's memory or his phone bill to verify whether Grant really called Smith. A maroon van pulled into the park, and Grant went alone to the van and briefly conversed with its occupants out of earshot of McKinney and the surveillance team. The van then left. Grant returned to McKinney and told the detective that Smith had only soft cocaine but was going to cook it into crack. McKinney told Grant to call him when he had crack to sell. Meanwhile, Detective Miguel Rivera, a member of a surveillance team that had preceded McKinney to the park, followed the maroon van long enough to identify the occupants as Smith and Black.

Later that day, Grant called McKinney to say that Smith had a batch of crack ready and that they should all meet again at Packard Park. Grant testified that he arrived first, then Black and Smith, and later McKinney. When McKiney

arrived Grant immediately got into his car and displayed 25.47 grams of crack (short of an ounce), which he said that he had received from Smith inside the van just before McKinney (or the surveillance team) arrived. McKinney then gave Grant $1000 in identifiable bills. Grant put the money in his pocket, returned to the maroon van, and got inside. The back-up and surveillance team finally arrived late, and McKinney signaled for an arrest. Grant, Smith, and Black were all arrested, and the buy money was found on the floor of the rear passenger seat of the van next to Grant. When Grant was interviewed shortly after the arrest, he maintained that he had received the crack from Smith. He also said that Black was not involved in the sale.

Grant, Smith, and Black were all arrested and charged with distributing and conspiring to distribute crack. Eight days before trial Grant pleaded guilty and made a deal with the government in which he agreed to testify at Smith and Black's trial. According to Grant's plea agreement, the government agreed to drop the conspiracy charge against him, recommend that he receive a downward adjustment for acceptance of responsibility, and recommend a sentence at the low end of the guideline range. Grant also received other benefits not mentioned in the plea agreement. The government elected not to seek an enhancement of Grant's mandatory minimum sentence from 5 to 10 years based on Grant's prior felony drug conviction, *see* 21 U.S.C. § 851, and later the government moved for a substantial-assistance downward departure under U.S.S.G. § 5K1.1. Grant was ultimately sentenced to 57 months. Smith, with no prior drug convictions, received 115 months.

On appeal, Smith argues that there was insufficient evidence to convict him of either charge. Regarding his distribution charge, he attacks Grant's credibility but does not argue that Grant's testimony, if credible, would be insufficient evidence. Smith says that his conviction "was

based primarily upon the testimony of . . . Grant, a convicted felon and admitted drug dealer, and a person who later received a downward departure motion for his testimony." Smith's conviction depended heavily on Grant's credible testimony; Grant was the only witness who could testify that he called Smith to the park the first time, and he provided the only testimony about the details of their first conversation at the park. Furthermore, he provided the main testimony linking Smith with the ultimate drug transaction. The only other incriminating evidence against Smith was an officer's testimony that while he was being interrogated Smith announced that he had not sold "crack." The interrogating officer said that no one ever told Smith that the drug sale specifically involved crack. The jury found Grant credible and accepted his testimony regarding Smith's involvement, and we upset credibility determinations made by juries only in "exceptional circumstances, such as 'where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.'" *United States v. Williams*, 216 F.3d 611, 614 (7th Cir. 2000) (citations omitted). Grant's testimony that he received the drugs from Smith is not physically impossible and it provides sufficient evidence to support Smith's distribution conviction.

Regarding Smith's conviction for conspiracy to distribute crack, he argues that the government offered insufficient evidence of a conspiracy because it proved only an ordinary buyer-seller relationship between him and Grant, not a joint conspiracy to sell the drugs to McKinney. Smith is correct that in the case of drug conspiracies, it is not sufficient for the government to prove that the defendant was in a mere buyer-seller relationship to the alleged coconspirator. *See United States v. Rock*, 370 F.3d 712, 714 (7th Cir. 2004). If the government had proven merely that Smith sold the drugs to Grant, and that Grant turned

around and sold them to McKinney, there would be insufficient evidence of a conspiracy. *See id.* But if Grant's testimony is to be believed, there is sufficient evidence that he and Smith worked in concert to sell the drugs to McKinney. According to Grant, Smith knew that it was McKinney and not Grant who insisted that the cocaine be cooked into crack. Additionally, Smith did not make Grant pay for the drugs but rather waited for Grant to procure the money from McKinney. The government also points out on appeal that when McKinney noticed that the ounce was short, Grant did not take responsibility for it himself, but rather offered to return to Smith to correct the problem. Finally, during the first trip to the park, Grant referred to Smith and Black as "my boys," suggesting some previous connection between them. Together, these facts show that Smith and Grant were on the same side of the transaction, and thus there was sufficient evidence to establish a conspiracy. *See id.*

Smith also argues on appeal that his sentence violates the Sixth Amendment because it includes a two-level sentencing enhancement that was based on facts neither admitted by Smith nor found by a jury. *See Blakely*, 124 S. Ct. 2531; *Booker*, 375 F.3d 508. Smith testified at trial that he was not involved in the drug sale and that the reason he went to the park twice was to plan a basketball game with Grant. At sentencing the district court imposed an enhancement for obstruction of justice because it concluded that Smith committed perjury with his testimony. Under *Blakely* and *Booker*, an increase in the defendant's sentence may not be based solely on a judge's findings of fact, so we vacate the enhancement and remand for resentencing.

Thus we AFFIRM the judgment of conviction but VACATE the sentence and remand for resentencing.

No. 03-3004

A true Copy:

      Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*