NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 26, 2007
Decided April 26, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2512

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the Northern |
| | District of Illinois, Eastern Division. |
| *v.* | |
| | No. 04 CR 1090 |
| MARCUS ROBINSON, | |
| *Defendant-Appellant.* | Mark R. Filip, |
| | *Judge.* |

**O R D E R**

Marcus Robinson was found guilty by a jury of conspiracy to distribute crack cocaine, 21 U.S.C. § 846, and possession with intent to distribute crack cocaine, *id.* § 841, along with other offenses not relevant to this appeal. The district court sentenced him to 240 months' imprisonment and 10 years of supervised release. He now challenges the jury's verdict on the ground that insufficient evidence supported his convictions, particularly the conviction for conspiracy, because, he contends, he and his supplier were merely a buyer and seller and did not conspire to further drug sales. In addition, he challenges the reasonableness of his sentence. Because sufficient evidence shows that Robinson and his supplier were in a conspiracy that included the resale of drugs by Robinson, and because his sentence could not have

been lower since it was the applicable statutory minimum, we affirm.

## I. BACKGROUND

The government's case included wiretap recordings of Robinson's phone calls with his supplier, James Cross. The wiretap (of Cross's phone) was in place between May and July 2004, but the drug conspiracy itself ran from January to August 2004. In addition to hearing about Robinson's drug activities from the horse's mouth over these recordings, the jury heard testimony from Cross, who pled guilty and cooperated in exchange for a shorter sentence, and from Milton Patterson, Cross's cousin, housemate, and occasional middleman. The combined effect of that evidence is that over the eight-month period of time at issue, Robinson frequently bought distribution levels of crack and powder cocaine from Cross—sometimes an ounce at a time, but more frequently a half- or quarter-ounce. (Cross testified that on the street, crack intended for personal use is usually bought in dime bags ($10) or nickel bags ($5), and that a half-ounce of crack yields about 40 dime bags.) Robinson would then resell the drugs on the street or by telephone and return to Cross for more.

## II. ANALYSIS

On appeal, Robinson first contends that insufficient evidence showed that he and Cross conspired that Robinson would resell the drugs, arguing that instead, they merely maintained a buyer/seller relationship. This will be a tough slog since appellate courts are deferential to juries; we view the record in the light most favorable to the government and will reverse only if there is no evidence from which the jury could have found the elements of the charged offenses beyond a reasonable doubt. *See United States v. Johnson*, 437 F.3d 665, 675 (7th Cir. 2006).

To prove a conspiracy to distribute drugs under 21 U.S.C. § 846, the government had to show that Robinson and Cross agreed to commit an unlawful act beyond the sale of drugs from Cross to Robinson. *See United States v. Rock*, 370 F.3d 712, 714 (7th Cir. 2004). In this case, that additional unlawful act was Robinson's resale of the drugs. But merely buying drugs from someone and reselling them—even doing so regularly—does not create a conspiracy. *See United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001). Cross must have been sufficiently interested in the resales that he and Robinson could be said to be on the same side of the deal, rather than a buyer and a seller operating at arm's length. *See id.* Courts look at a number of factors, none of which standing alone is sufficient, to determine whether a buyer and seller cross the fuzzy line into a conspiracy: the length of the relationship; the existence of mutual trust; established methods of payment, especially "fronting" (sale on credit); standardization of transactions; and the seller's knowledge of the buyer's resale objectives. *Id.*; *see also United States v. Melendez*, 401 F.3d 851, 854 (7th Cir. 2005). Thus the existence of

a few deals in which the seller doesn't depend on the buyer's ability to turn around and sell the drugs is insufficient, *United States v. Thomas*, 284 F.3d 746, 752–56 (7th Cir. 2002); *Rivera*, 273 F.3d at 756; *United States v. Contreras*, 249 F.3d 595, 599–600 (7th Cir. 2001); *United States v. Torres-Ramirez*, 213 F.3d 978, 981–83 (7th Cir. 2000), whereas a series of standardized deals involving fronting and other indicia of mutual trust adds up to a conspiracy, *United States v. Carillo*, 435 F.3d 767, 776 (7th Cir. 2006); *United States v. Askew*, 403 F.3d 496, 502 (7th Cir. 2005); *United States v. Haywood*, 324 F.3d 514, 517 (7th Cir. 2003).

This is not as strong a case for the government as, say, *United States v. Smith*, 393 F.3d 717, 719–20 (7th Cir. 2004), in which the seller was so wound up in the buyer's resale business that he didn't expect payment until the buyer was able to move the drugs on the street. Nevertheless, sufficient evidence supports the jury's verdict on the conspiracy charge. Cross and Robinson had an extensive relationship, as evidenced by a pen register capture of over 800 phone calls between the two during the period in question. *See United States v. Eberhart*, 467 F.3d 659, 669 (7th Cir. 2006) (196 phone calls between parties over six months showed substantial relationship). Over an eight-month period, Robinson regularly bought if not uncommonly large amounts of cocaine, certainly more than he could use himself. Evidence also showed that Robinson apprised Cross of his progress (or bemoaned his lack thereof) in selling the drugs, and that Cross maintained an interest in his buyer, warning Robinson to stay away from other sellers who were under investigation and checking in to make sure Robinson made it home after a sale without running into the police. On one occasion Robinson loaned Cross his drug scale when Cross's stopped working; on another Robinson tried to refer a client to Cross whom Cross could supply with drugs for street sales. The two clearly trusted each other: Cross loaned Robinson money and once accepted less than full payment until Robinson could make up the rest on the street—which Robinson repeatedly promised to do. Whether we characterize this as partial fronting or merely "a favorable price on the cocaine on the expectation of future purchases," *Contreras*, 249 F.3d at 600, it still tends, when coupled with the other evidence, to show a concrete, interlocking interest that goes beyond individual buy and sell transactions. *See also Askew*, 403 F.3d at 502 (partial payment indicates a regular course of dealings).

Robinson also briefly challenges the sufficiency of the evidence on his conviction for possessing with intent to distribute between 5 and 50 grams of crack cocaine. This challenge fails as well. Both Cross and middleman Patterson testified about one particular deal on June 24, 2004, in which Cross, acting through Patterson, sold Robinson one ounce (or 28.35 grams) of crack. Wiretaps corroborate this testimony. Robinson says that the day's sale was made in powder cocaine, but both Cross and Patterson specifically and repeatedly said it was crack, and the jury believed them. We will not reweigh that finding on appeal. *See United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007).

Finally, Robinson contends that the district court recited but did not apply the factors set out in 18 U.S.C. § 3553(a) when imposing sentence. But Robinson received the statutory minimum sentence based on his conspiracy conviction and a prior felony drug offense, and he does not argue that the exceptions to the statutory minimum set out in § 3553(e) or (f) apply. He could not have received a lower sentence. *See United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006).

Robinson makes several other arguments that invite us to upset well-settled legal principles. These contentions are unpersuasive and do not require additional discussion. The judgment of the district court is AFFIRMED.