**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 23, 2007
Decided May 24, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-4165

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois |
| *v.* | No. 4:03CR40059-001 DRH |
| JAMES A. COOPER, *Defendant-Appellant.* | David R. Herndon, *Judge.* |

**O R D E R**

James Cooper and his confederates dealt powder and crack cocaine. A jury found him guilty on drug and gun charges, 21 U.S.C. §§ 846, 841(a)(1); 18 U.S.C. § 922(g)(1), and the district court sentenced him within the applicable guidelines range to a total of 285 months' imprisonment. Cooper filed a notice of appeal, but his appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he cannot discern a nonfrivolous issue to pursue. Counsel's supporting brief is facially adequate, and Cooper has responded to our invitation under Circuit Rule 51(b) to comment on counsel's submission. We limit our review to the potential issues identified in counsel's brief and Cooper's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Police sent an informant to make three separate controlled buys of crack from James Golden, who ran drugs for Cooper. At trial Golden testified for the government that on all three occasions he used the informant's cell phone to contact Cooper, who then—outside of the informant's view—delivered the drugs. Golden also testified that he acted as the middleman for Cooper in other drug transactions and that Cooper occasionally fronted him drugs, expecting payment only after he resold them. The informant corroborated Golden's account.

Surveillance officers who monitored the controlled buys also testified that they observed Cooper and Golden meet during all three transactions, and that they found the marked money from the third purchase in Cooper's car when they arrested him. Following his arrest, Cooper disclosed after *Miranda* warnings the numbers assigned to his pager and cell phone; those numbers were dialed from the informant's cell phone during the controlled buys. Officers also executed a search warrant of Cooper's apartment and found roughly 540 grams of crack, 340 grams of powder cocaine, three firearms, and $8,400 in currency. The police overlooked another $112,000 in $20 bills that a maintenance man found later. Over trial counsel's objection of unfair prejudice, the district court admitted Cooper's financial affidavit supporting his request for appointed counsel. In that affidavit he asserted that he was financially unable to obtain an attorney because he earned only $300 per month.

The government also called nine other witnesses who bought drugs from Cooper, sometimes through middlemen. One witness explained that Cooper would usually front him drugs twice a day. He testified that they would split "fifty-fifty" the proceeds from the ensuing drug sales—the witness sold the crack for twice what he agreed to pay the defendant.

In the brief supporting his motion to withdraw, counsel identifies a litany of potential arguments—many requiring no discussion here—but concludes that all of them would be frivolous. Both counsel and Cooper first consider whether Cooper could argue that the government failed to present sufficient evidence to convict him of conspiracy to possess and distribute crack. Although trial counsel moved for a judgment of acquittal after the government rested, he failed to renew this motion at the close of all the evidence; our review thus would be for plain error. *See United States v. Owens*, 301 F.3d 521, 527-28 (7th Cir. 2002).

To prove the conspiracy count the government had to show not a buyer-seller relationship between Cooper and those who bought crack from him, but rather that he worked in concert with others to sell drugs. *See United States v. Smith*, 393 F.3d 717, 719-20 (7th Cir. 2004). We have held that an established method of payment—like fronting drugs—and a shared stake in the sale of the drugs can demonstrate this type of joint effort. *Id.* At trial one witness testified that Cooper

typically fronted him drugs twice each day, and that they split the proceeds from his sales. Golden likewise testified that Cooper fronted him drugs, and that if he consumed any of those himself—as he often did—he would "work it off by selling more" drugs for Cooper. Thus, we agree with counsel that arguing that this evidence is insufficient to support Cooper's conspiracy conviction would be frivolous.

Counsel next considers whether Cooper could argue that the district court erred by denying his pro se motion for appointment of substitute counsel. We review such rulings only for an abuse of discretion, *see United States v. Best*, 426 F.3d 937, 947 (7th Cir. 2005), and we agree with counsel that it would be frivolous to argue that there was an abuse of discretion here. The district court conducted a hearing on the motion—at which Cooper and trial counsel were present—and the court determined that there had not been an irretrievable breakdown between them. This conclusion finds support in Cooper's pretrial motion, which alludes to letters and meetings between Cooper and his counsel regarding potential motions, witnesses, and defense theories. Although Cooper disagreed with some of trial counsel's tactical decisions, their relationship never reached the point of a total breakdown that would have warranted substituting another lawyer. *See id.* at 947-48. After all, counsel, not the defendant, makes these strategic decisions because they require legal training. *See United States v. Babul*, 476 F.3d 498, 500 (7th Cir. 2007); *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000).

Counsel and Cooper next consider whether Cooper could argue that the delayed commencement of his trial violated his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-74. Cooper, though, never moved to dismiss the indictment on the ground that his statutory right to a speedy trial was violated, so that argument is waived. *See* 18 U.S.C. § 3162(a)(2); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004).

In his Rule 51(b) response, Cooper suggests that a police officer lied in an affidavit for a warrant to search his apartment and contends that the district court should have conducted a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether to suppress the drugs and guns found there. The affiant represented that the informant who made the controlled buys had fingered Cooper as the source of the drugs, but, as Cooper notes, the informant could not identify him at trial. It would be frivolous, however, to raise a *Franks* argument on appeal. Cooper forfeited that argument by not moving to suppress. *See United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005); *United States v. McDonald*, 723 F.2d 1288, 1292-93 (7th Cir. 1983). And in any event, Cooper was not entitled to a *Franks* hearing because, even after setting aside the allegedly false information, sufficient content in the affidavit supports a finding of probable cause. *See United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003). The affiant stated that

agents observed Cooper meet with Golden during the controlled buys and saw Cooper stop at his apartment immediately before one of the purchases.

Counsel also questions whether the district court made errors in its multiple evidentiary rulings during Cooper's trial. First, counsel considers whether Cooper could argue that the district court admitted evidence that was unfairly prejudicial. The court allowed in Cooper's postarrest statement in which he identified the numbers assigned to his pager and cell phone. Both numbers appeared on the informant's cell phone during the controlled buys, and like any probative evidence the statement was prejudicial to Cooper. *See Souffront*, 338 F.3d at 826. But to argue that it *unfairly* prejudiced Cooper would be frivolous. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); *United States v. Fawley*, 137 F.3d 458, 466 (7th Cir. 1998). The same is true for Cooper's affidavit supporting his request for appointed counsel. In that affidavit Cooper asserts that he had a meager income, which the court found relevant in light of the more than $120,000 in cash found in his apartment. Although it was damaging because it suggests that Cooper had an illicit source of income, the affidavit did not lure the jury into finding him guilty based on improper reasons.

Counsel also considers arguing that the witness used to introduce Cooper's gambling records from Harrah's Casino—which reveal that from 1999 to 2004 he played a total of $334,675 on cash games and lost $44,555—was unqualified to do so. *See* Fed. R. Evid. 803(6). We have held that a witness laying the foundation for business records must have knowledge concerning their creation but doesn't need personal knowledge about the specific entries in those records. *See United States v. Lawrence*, 934 F.2d 868, 870-71 (7th Cir. 1991). Here, the casino's regulatory compliance officer testified that the records were compiled from a regularly maintained computer tracking system and described in detail the casino's method of recording their patrons' bets. Thus, arguing that she was unqualified to introduce the evidence would be frivolous.

Counsel next raises two potential issues regarding the jury. He first addresses whether Cooper could argue that the district court improperly excused a juror on the third day of trial based on her representation that she could not concentrate because she had been kicked out of her home. Cooper, however, waived this argument by agreeing with the district court's proposal to excuse the juror and replace her with an alternate. *See United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Cunningham*, 405 F.3d 497, 502 (7th Cir. 2005); *Johnson*, 223 F.3d at 669-70. Counsel also considers asking whether the district court erred by refusing to grant a motion for mistrial after two jurors overheard a nervous

government witness complain that she had not received money for lunch as promised by the government. We would review the court's denial of this motion for abuse of discretion. *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998). Outside of the presence of the other jurors, the court held a hearing where both jurors explained what they observed and asserted that they would assess the witness' credibility from what transpired during the trial alone. *Cf. Schaff v. Snyder*, 190 F.3d 513, 534 (7th Cir. 1999) ("[The] unintended receipt of extraneous information by the juror was an outside unauthorized communication, but it certainly was not a purposeful intrusion into the sanctity of the juror's domain."). On this record it would be frivolous to argue that the court abused its discretion by refusing to grant a mistrial.

Counsel also raises three potential arguments regarding Cooper's overall prison sentence. First, counsel and Cooper consider whether Cooper could argue that the district court miscalucated the drug quantity, which largely controlled his offense level under the guidelines. We agree with counsel that this argument would be frivolous; Cooper's base offense level of 36 was justified simply by the 540 grams of crack found in his apartment. *See* 2D1.1(c)(2).

Both counsel and Cooper also question whether the district court properly increased Cooper's offense level based on the firearms found in his apartment. *See* U.S.S.G. § 2D1.1(b)(1). This adjustment applies "unless it is clearly improbable that the weapon was connected with the offense." *Id*. cmt. n.3; *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000). Here, officers testified that they found the firearms at Cooper's residence, where he also stored large amounts of drugs, and Cooper offered no evidence that they were unconnected with his offense. Thus, it would be frivolous to argue that the court erred by applying this adjustment.

Counsel also considers whether Cooper could argue that his prison sentence is unreasonable because one of his co-conspirators, Golden, was sentenced to 70 months' imprisonment, while he was sentenced to 235 months' imprisonment. Cooper's sentence was within the properly calculated guidelines range and is thus entitled to a presumption of reasonableness. *See United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006). Although the Supreme Court recently granted a writ of certiorari to consider whether it is consistent with *United States v. Booker*, 543 U.S. 220 (2005), to afford a presumption of reasonableness to a sentence within the guidelines range, *see United States v. Rita*, No. 05-4674, 177 F. App'x 357 (4th Cir. May 1, 2006), *cert. granted*, 127 S. Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5754), the resolution of that question would not affect our conclusion that challenging the term imposed here would be frivolous. Sentencing courts are required to avoid "unwarranted sentencing disparities among defendants . . . found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), but that requirement means that courts must avoid "an unjustified difference across judges (or districts) rather than among

defendants to a single case." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). And in any event, Cooper and Golden were not found guilty of similar conduct. Officers found over 540 grams of crack cocaine, 340 grams of powder cocaine, and three firearms at Cooper's apartment, while Golden was found with a single rock of crack.

Finally, we are in agreement with counsel that if Cooper wishes to argue that trial counsel was ineffective for refusing to file requested motions and call certain witnesses, he would be better served by bringing that claim through a collateral proceeding under 28 U.S.C. § 2255. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.